**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00686-REB-CBS

HOLCIM (US) INC., a Delaware corporation,

    Plaintiff,

v.

LIMEROCK MATERIALS, LLC, a Nevada limited liability company d/b/a CWW West;
and
MICHAEL P. VAHL, an individual,

    Defendants.

**ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT**

**Blackburn, J**

    This matter is before me on the **Defendants' Motion To Set Aside Default Judgment** [#28][1] filed January 25, 2012. The plaintiff filed a response [#29] and the defendants filed a reply [#30]. I deny the motion.

**I. STANDARD OF REVIEW**

    A default judgment may be set aside under FED. R. CIV. P. 60(b). FED. R. CIV. P. 55(c). The grounds on which a judgment may be set aside under FED. R. CIV. P. 60(b) include mistake, inadvertence, surprise, or excusable neglect, of if the judgment is void. A movant seeking to set aside a default judgment based on mistake, inadvertence, surprise, or excusable neglect must show that it has a meritorious defense as well as a good reason to set aside the default. ***U.S. v. Timbers Pres., Routt County, Colo.***, 999

---

[1] "[#28]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

F.2d 452, 454 (10th Cir. 1993).  Some

> courts also consider whether the moving party's culpable conduct caused or led to the default. *E.g. Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987).  "Courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983). Courts have established three requirements which must be met when setting aside a default judgment under Rule 60(b): (1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment. *See Meadows*, 817 F.2d at 521; *INVST Fin. Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 398 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); 6 Moore, supra, ¶ 55.10.  The Second Circuit considers the first factor in terms of whether the default was willful. *Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir.1990), *cert. denied*, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991); *Davis*, 713 F.2d at 915. Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default. 6 Moore, supra, Â¶ 55.10[1]; *see also Meadows*, 817 F.2d at 521 (receiving actual notice and failing to respond is culpable conduct).

*Timbers*, 999 F.2d at 454 (footnote omitted).

## II.  BACKGROUND

Defendant Michael P. Vahl formed Limerock Materials, LLC.  Limerock also is a defendant in this case.  The plaintiff, Holcim (US) Inc., filed this suit to collect from Limerock and Mr. Vahl amounts due for materials purchased by Limerock from Holcim.  On August 2, 2011, the court entered default judgment [#22] against both Mr. Vahl and Limerock..  In the default judgment [#22], Holcim is awarded the principal sum of 142,098.65 dollars, prejudgment interest totaling 18,710.67 dollars, attorney fees totaling 6,153.47 dollars, costs totaling 605.47 dollars, and post-judgment interest at the contract rate of 1.5 percent per month.

In their motion to set aside the default judgment, the defendants argue that the default judgment against Limerock should be set aside because Limerock failed to

2

respond to the complaint in a timely fashion due to excusable neglect and because Limerock has a valid defense to the plaintiff's claims. The defendants argue that the default judgment against Mr. Vahl should be set aside because Mr. Vahl never was served properly with a summons and the complaint in this case.

## II.  ANALYSIS

### A.  Limerock - Excusable Neglect

According to Limerock, its failure to respond to the complaint in a timely fashion was due to excusable neglect. Limerock claims it was not aware of this case until its principal, Mr. Vahl, learned of the default judgment in this case. Limerock validly was served with a summons and the complaint but, according to Limerock, Limerock's failure to monitor the mail at its address of record prevented Limerock from learning in a timely fashion that it had been served with the summons and the complaint.

Limerock is a Nevada limited liability company. Mr. Vahl says he formed Limerock in May of 2010 for the purpose of representing his interests in a joint venture with Mike Stratton. *Vahl declaration* [#28-1], ¶ 6. Mr. Vahl listed an address in Riverside, California as Limerock's principal address because the office at that address was occupied routinely and, at the time of Limerock's formation, Mr. Vahl regularly worked out of that office. *Id.*, ¶ 7. On March 31, 2011, Limerock was served with a summons and the complaint in this case through its registered agent for service of process. *Affidavit of Service* [#8]. The registered agent sent the summons and the complaint to Limerock's address of record in Riverside, California. *Id.*, ¶ 8. When the summons and complaint were mailed to Limerock by the registered agent, Mr. Vahl did not routinely conduct business from Limerock's address and did not routinely go to that address. *Id.*, ¶ 8. According to Mr. Vahl, "(b)ecause Vahl did not conduct any actual

3

business at Limerock's address between March 29, 2011 and August 2, 2011, he did not receive the Complaint and Summons before the default judgment was entered."

Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default.  *Timbers*, 999 F.2d at 454.  The current record does not show that Limerock acted willfully in ignoring the summons and complaint that were served on Limerock.  Thus, the question is whether or not Limerock's failure to monitor the mail at its address of record, which failure purportedly caused Limerock to default, constitutes excusable neglect.

Generally, an artificial entity, such as a limited liability corporation (LLC), must designate an agent for service of process.  See, e.g., Nev. Rev. Stat. Ann. § 14.020.  With this designation, one who seeks to serve the LLC readily can find the person authorized to accept service for the LLC.  Fundamentally, it is the responsibility of the principal or principals of the LLC to instruct the agent where to deliver papers served on the agent.  An LLC cannot choose to ignore papers validly served on the LLC's agent by choosing to ignore the point of delivery to which the LLC's agent has been directed to deliver such papers.  Ignoring the point of delivery, whether intentionally or not, throws a monkey wrench into a system designed carefully to promote efficient service of process on artificial entities.  Limerock's failure to monitor the mail at its address of record does constitute neglect, but nothing in the record shows that Limerock has a valid or reasonable excuse for this failure to monitor the mail at its address of record.  Thus, Limerock's default was not caused by Limerock's excusable neglect.

### B.  Limerock - Meritorious Defense

In evaluating the meritorious defense prong, "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual

circumstances surrounding the dispute, if true, would constitute a defense to the action. For purposes of this part of the motion, the movant's version of the facts and circumstances supporting his defense will be deemed to be true." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).

In the joint venture for which Limerock was created, Limerock was to be responsible for acquiring and financing equipment for any projects awarded to the joint venture, and Mike Stratton would be responsible for day to day operations of the company.  *Vahl declaration* [#28-1], ¶ 5.  The day to day operations involved, primarily, pouring concrete.  *Id.*  Stratton used an entity named Construction Materials and Transportation Services, Inc. for his part of the joint venture.  *Id.*, ¶ 6.  That company also is known as ConMat Mobile or ConMat.  *Id.*

Limerock opened accounts with several suppliers, including Holcim, to support the joint venture and a project known as the Telluride project.  *Id.*, ¶ 10.  ConMat directed suppliers to contact Limerock for the purpose of establishing credit for the joint venture and arranging the purchase of supplies.  *Id.*  Holcim sold cement to Limerock under a contract with Limerock.  The contract consists of a credit application and a document captioned "Terms and Conditions of Sale."  *Response* [#29], Exhibits A and B.  In the credit application, Mr. Vahl personally guaranteed the full and prompt payment of any amounts owed to Holcim by Limerock.  *Response* [#29], Exhibit A, p. 2.  Holcim did not have a contract with Stratton or ConMat Mobile.  Limerock, through Mr. Vahl, made six or seven payments to Holcim for some of the cement sold to Limerock by Holcim.  *Response* [#29], Affidavit of John D. Higginbotham, Exhibit A (Vahl Deposition), 21:14-23, 24:2-19.  All of the cement sold to Limerock by Holcim was used by the joint venture on the Telluride project.

Limerock claims it has a valid defense to Holcim's claim because ConMat took delivery of the cement "used the cement, and was ultimately responsible for payment to Plaintiff. Under these circumstances, ConMat should be the party held liable, no Limerock." *Motion* [#28], p. 9. In its reply, Limerock describes its meritorious defense as follows: "Limerock has claims against the parties to its joint venture, ConMat and Mike Stratton, for them to share in any liability to Holcim." *Reply* [#30], p. 5. "Limerock should be entitled to defray any of its liability to Holcim by asserting third-party claims against ConMat and Stratton." *Id.*, p. 6. Limerock contends also that Holcim should pursue a claim against ConMat because ConMat potentially is liable as a buyer of goods who accepted goods from Holcim, even though there is no written contract between Holcim and ConMat. *Motion* [#28], pp. 9-10. By not pursuing ConMat, Limerock argues, Holcim has released a joint debtor of Limerock. In that circumstance, Limerock contends , Limerock is not liable for more than its proportionate share of liability to Holcim.

None of these purported defenses constitute defenses by which Limerock could defeat Holcim's claims against Limerock under the written contract between Limerock and Holcim. The existence and content of that contract is not disputed. It is undisputed that Holcim sold supplies to Limerock under the contract, and those supplies were delivered to ConMat, Limerock's joint-venturer. It is undisputed that Limerock paid some amounts due under the contract, and that about 142,000 dollars still is due to Holcim under the terms of the contract. The fact that Limerock may have a claim against its joint-venturers, ConMat and/or Stratton, to recover some or all of the amount due to from Limerock to Holcim does nothing to defeat Holcim's claim that Limerock owes Holcim the amounts at issue in this case. Such claims are not defenses against

6

Holcim's claims, they are potential claims Limerock may assert against third parties requiring those third parties to share with Limerock some or all of Limerock's liability to Holcim.  Further, the evidence that ConMat is a joint debtor of Limerock is thin at best.  According to Mr. Vahl, Limerock and ConMat agreed that Limerock was to be the credit and financing arm of the joint venture.  Limerock played that role, and Holcim relied on Limerock in that role.  Limerock is the primary obligor on the contract between Limerock and Holcim.  In the current context, the fact that Holcim might be able to pursue a claim such as quantum meruit or quasi contract against others does not constitute a defense to Holcim's claims in this case.  Limerock has not demonstrated that it has a meritorious defense to Holcim's claims in this case.

### C.  Michael Vahl - Service of Process

Mr. Vahl contends the default judgment against him must be set aside because he never was served properly with a summons and complaint.  "(S)ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." **Oklahoma Radio Associates v. F.D.I.C.**, 969 F.2d 940, 943 (10th Cir. 1992).  A default judgment in a civil case is void if the court does not have personal jurisdiction over the defendant. **Hukill v. Oklahoma Native Am. Domestic Violence Coal.**, 542 F.3d 794, 797 (10th Cir. 2008).  Absent valid service of process on a defendant, the court does not have personal jurisdiction over a defendant.  Always, it is the plaintiff's burden to prove, by a preponderance of the evidence, facts demonstrating that the court has jurisdiction. **See Fed. Deposit Ins. Corp. v. Oaklawn Apartments**, 959 F.2d 170, 174 (10th Cir. 1992).  This includes personal jurisdiction over a defendant, which is acquired only with valid service of process.

It is undisputed that Mr. Vahl resides at 7126 Stanhope Lane, Riverside, California. The proof of service on Mr. Vahl indicates that on March 26, 2011, at 9:35 a.m., the process server served a summons and the complaint at Mr. Vahl's address. *Declaration of Service* [#7], p. 2. The proof of service indicates that the person served was "MICHAEL P. VAHL - 50ish, 250lbs, 6', white hair, Caucasian male." *Id*. Attached to the plaintiff's response is the affidavit of John Higginbotham, a lawyer who took Mr. Vahl's deposition on January 19, 2012. *Response* [#29], Higginbotham Declaration [#29-4]. Mr. Higginbotham describes Micael P. Vahl as a man in "his early-to-mid fifties, he is Caucasian, approximately six feet in height, appears to weigh over 220 pounds, and his hair color is very light." *Id.*, ¶ 6. The plaintiff provides also a declaration of the process server, Robert See. *Response* [#29], See Declaration [#29-4]. According to Mr. See, On March 26, 2011, at about 9:35 a.m., he approached the front door of the home at 7126 Stanhope Lane, Riverside, California, made his presence known, and asked for Michael P. Vahl. *Id*, ¶¶ 5 - 8. "A man fitting the general physical description contained in my affidavit of service, attached hereto as <u>Exhibit A</u>, presented himself and I handed him the Service Papers." *Id.*, ¶ 9.

In an affidavit attached to his motion, Mr. Vahl says he never was served personally with a summons and the complaint in this case. *Motion* [#28], Exhibit A (Vahl Declaration), ¶ 14. Mr. Vahl says he was not at home on March 26, 2011, at 9:35 a.m. *Id.*, ¶ 15. Rather, he says he was at a charity baseball tournament, the Over the Line Baseball Tournament. *Id.* Mr. Vahl provides also a declaration of Rory Smith. *Motion* [#28], Exhibit D. Mr. Smith says he was at the Over the Line Baseball Tournament with Mr. Vahl at 9:35 a.m. on March 26, 2011. *Id.* Mr. Vahl says he has medium brown hair. *Vahl Declaration*, ¶ 16. Mr. Vahl says also that his next door neighbor fits the

8

description "50ish, 250lbs, 6', white hair, Caucasian male." *Id.*, ¶ 17. The neighbor, Mr. Vahl says, is "completely gray and could be said to have white hair." *Id.*

Based on this evidence, I conclude that the plaintiff has proven, by a preponderance of the evidence, that Mr. Vahl validly was served with a summons and the complaint in this case on March 26, 2011, at about 9:35 a.m. Of course, there is some conflict in the evidence described above. Thus, I must determine what evidence carries the greater weight on this issue. Mr. Vahl argues that the process server's description of Mr. Vahl's weight and hair color indicate that the process server served someone other than Mr. Vahl. In the context of all of the details about service on Mr. Vahl, these discrepancies are relatively minor. Mr. Vahl also has submitted credible evidence that he was not at home on March 26, 2011, at 9:35 a.m. On the other hand, I must consider the Declaration of Service [#7] and the See Declaration [#29-9]. The Declaration of Service [#7] was executed two days after the process server appeared at Mr. Vahl's house, and thus provides a record of the key events which was prepared close in time to the key events. Further, the See Declaration [#29-9] includes very specific facts which support the conclusion that Mr. Vahl was properly served. The See Declaration [#29-9] demonstrates that the process server, Mr. See, appeared at Mr. Vahl's address, went to the front door, and asked for Mr. Vahl. Subsequently, a man fitting Mr. Vahl's description appeared at the door, and that man was served with the relevant papers. Considering all of the evidence on this issue, the Declaration of Service [#7] and the See Declaration [#29-9] carry greater weight and, therefore, prove by a preponderance of the evidence that Mr. Vahl was served on March 26, 2011, at about 9:35 a.m. Therefore, the default judgment will not be set aside based on Mr. Vahl's contention that he was not properly served with a summons and the complaint.

## IV.  CONCLUSION AND ORDERS

Limerock and Mr. Vahl have not demonstrated that they are entitled to have the default judgment against them set aside.  Limerock has not shown that its default was caused by excusable neglect.  In addition, Limerock has not shown that it has a meritorious defense to the plaintiff's claims in this case.  Holcim has shown, by a preponderance of the evidence, that Mr. Vahl validly was served with a summons and the complaint in this case.  With proof valid service on Mr. Vahl, there is no basis to set aside the default judgment against Mr. Vahl.

**THEREFORE IT IS ORDERED** that the **Defendants' Motion To Set Aside Default Judgment** [#28] filed January 25, 2012, is **DENIED**.

Dated September 26, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge